Our next case for argument today is 23-1826, Cotter v. United States. Is it Ms. Steeve? Ms. Steeve, yes. Please proceed. Thank you, Your Honor. I have three main points today. First, the plain language of the Price-Anderson Act extends indemnity on its face to parties like Cotter, whose liability for a nuclear incident arises out of, or in connection with, government contract activity in which the government agreed to provide indemnity coverage. If the Court has any doubts about that plain language reading, the legislative history confirms that. What is the contract language that the activity in this case for which indemnity is sought arises out of, or is in connection with? Your Honor, critically, there's no requirement in the statute or the contract, which incorporates the statutory language, that the activity has to be in connection with the contractual activity. That's what the Court below found, and that was error. The statute requires that Cotter's public liability has to arise out of, or in connection with, the contractual activity. And here, Cotter allegedly released nuclear materials produced by Mallinckrodt pursuant to the relevant contract for the Manhattan Project, and the public liability, meaning the liability from the nuclear incident, produced by... I don't understand. The company took radioactive waste and threw it on a landfill, without regard for the fact that it would kill many people, which it did. They were then sued, and they paid out for that. How is it that I should understand that the government was intending in this statute to adopt responsibility to bear the cost of that kind of action? So I'm trying to tether the damage that was caused by the action that was undertaken to the language arising out of, or in connection with. I'm trying to see where in the statute that action by your client is tethered to the government's agreement to indemnify. Sure, Your Honor. And let me be clear, there is a misunderstanding in the government's brief. The allegations with respect to the landfill are not at issue in this case. The issue, the public liability here arose from Cotter's possession of the material on the banks of Coldwater Creek. The allegation is that Mallinckrodt released some of the same material a mile upstream, and Cotter allegedly released some of the same material a mile downstream, and that material created a nuclear incident. And Cotter and Mallinckrodt were sued as joint tortfeasors. Now to your question about how could the government intend to indemnify acts even if they were negligent, the reason is the statute says on its face that its purpose is to protect the public. Congress considered a proposition that would have limited indemnity or excluded it if the entity was negligent, and the government rejected that proposal and enacted this indemnity provision, because otherwise it would create a situation where members of the public would be injured by nuclear material that's subject to this act and be left uncompensated. You're largely speculating about why we have the statute we have. Where in the statute does it make it clear that the action at issue here was tethered somehow to this contract in a way that the government intended to reimburse for it? Sure. And the goal to protect the public is explicit and codified in Section 2012 of the Act. The statutory language that affects that purpose is that the liability has to arise out of or in connection with the contractual activity. Here, Mallinckrodt's contract produced the material at issue, and Mallinckrodt was sued, as I just mentioned, as a joint tortfeasor with Cotter for allegedly releasing the same material into the creek for one nuclear incident. That's the connection, Your Honor. And the purpose of the statute is intentionally broad, because otherwise members of the public would be left uncompensated. The statute says that as long as you have that liability that's in connection with the contractual activity, you're covered. And the government has conceded that Congress' example of an airplane that flies into a nuclear reactor because of negligent maintenance, if the entity that's responsible for the negligent maintenance of the aircraft, if they have public liability for that nuclear incident, they get indemnity. But the government can't adequately explain why the entity negligently maintaining the aircraft would get indemnity, but Cotter wouldn't. There aren't any of the tight causal nexus requirements. Unfortunately, none of that is in the statute. You're talking about stuff that you perceive from the legislative history, but where is the... I keep asking you to tether it to the statute, and I guess your tethering is you think the words arising out of or in connection with means anything. Any radioactive byproduct, precursor product, final product, anything anyone at any point for all time does with it, the government will cover any injury caused by it. Well, to be clear, yes, Your Honor. But to be clear, there are limitations within the definition of nuclear incident. A nuclear incident, meaning something that could give rise to indemnity, can only occur with three types of nuclear material that are very highly regulated by the federal government. And in this case, that material is specific to the weapons defense project and the Manhattan Project. And the secondary purpose of the statute, which is codified in the statute, it's expressed, this is not speculation, the secondary purpose of the statute is to encourage private participation in the nuclear energy industry. Congress wanted to, as the court noted below, turn swords into plowshares, take this leftover nuclear material and convert it into useful nuclear energy, which is precisely the function that Cotter served. That is directly within the face of the statutory language and the purpose. And the court, we do cite cases like Asimov and Rancourt that say that in connection with is sweeping in scope, but you tether it to the statutory purposes. And the statutory purposes here are apparent to encourage parties like Cotter and Moundkraut, who did get indemnity for this, to have that joint liability that arises be indemnified pursuant to that particular contract. Remember, the structure of this statute, if you look at it, is omnibus in nature. It channels liability back to the government. So you have to identify what is the relevant contract. Well, the relevant contract here is the Moundkraut one. It produced the material and their joint torpedoes. So can I ask, what's your best case that the nuclear waste here arose out of, arises out of, or in connection with the contractual provisions at stake that interprets the statute in the way you suggest it should be interpreted? If I understand your Honor's question, is it with reference to the contract? Correct. Just the best case. Sure. So the contract incorporates the statutory definition. And it says that it extends not only to the contractor, but to any other person who has public liability. And it lays out four ways in which that happens. One of them is with respect to material produced under the contract. That's this material. Does that answer your question, Your Honor? No. I'm asking for the best case that you can cite us to that interprets the statute in the way you believe it should be interpreted. Your Honor, this is an issue of first impression. I can't do that. And the parties agree it is an issue of first impression? I believe so. I am not aware of any case that the government has cited that has addressed this issue before this Court. Very good. I understand the Court's hesitance to look at the airplane example because it is in the legislative history. I would note that the government adopts it and that it is a compelling example of just how broad the statute is. And the statute on its face simply says that if you have liability for a nuclear incident that arises out of or in connection with that contractual activity, then it would give rise to indemnity. The government agreed to provide that omnibus indemnity in this contract for this material. If you look at the 1962... Just to be clear, your view is that the liability for this material never ends? Well, Your Honor, at some point it will end, but as long as... Let's assume we're still within the half-life of the material. Right. So the indemnity runs with the material because the liability does. And the purpose of the statute on its face is to make sure that members of the public are not left uncompensated if they're injured by this material. What, if any, mechanisms did the government have available to it to try to limit a possibility of damage from this material that it instigated the creation of? Sure. Right. And it did for the defense of the United States, and it wanted to convert it into nuclear energy. And so to entice the private industry to... And this was all the material for Oak Ridge? The Manhattan Project. For Oak Ridge. Or for Richland. It was in the St. Louis downtown center and then moved to these sites on Coldwater Creek. And the government carefully regulated it. It required that when the material was sold to the private industry, that it be licensed. And the government came and inspected it. They had specific parameters. The entities faced revocation of license. And Cotter, do I remember, Cotter had a license? Cotter had a license. Five or six years or something? About four years for this specific material and it licensed it for that specific site where the government closely regulated and inspected. It could have faced penalties if the AEC had felt that it needed to, the Atomic Energy Commission. I need to ask just a factual question because I'm just baffled. When I brought up the landfill, you corrected me. And what am I missing? I'm looking at the complaint, which is at appendix page 31 and 32, that talks about the McClurg plaintiffs' allegations and the lawsuit. And it's all about the Westlake landfill. It's not about some shared damage done by Mallinckrodt and Cotter releasing into the water. So what am I missing? You corrected me as though I was completely wrong. And if I am, I'm happy to be corrected because this is a very dense case. And I am open to being told that I misread something. But what did I misread? Sure, Your Honor. So the government states that it has to do with the landfill. And there is a reference to the landfill in the McClurg complaint, which is their underlying liability. That reference is simply because the allegations in McClurg were that their injury arose from releases of the radioactive material from a site called Laddy Avenue, which is right near SLAPS where Mallinckrodt had its material. They're a mile apart here. And the allegation is those materials mingled in Coldwater Creek and that produced a nuclear incident. And why do they talk about Westlake Landfill? Right. So then the landfill allegation comes up. The reason I'm making that distinction,  is because there are ongoing active litigation about the landfill. That has nothing to do with the settled McClurg case. The allegations with respect to the landfill are merely that in transit to the landfill, a third party had its own contract and was transporting material it had taken from Cotter. And the allegation in the McClurg complaint is limited to that transport function that some of the material was released back into Coldwater Creek on its way to the landfill. The landfill allegations are completely separate. The McClurg Coldwater Creek allegations encompass what are called the haul routes, the transit. And Congress actually stated that transporters who accidentally released nuclear material into a stream would be covered by this indemnity. Did you just say accidentally released nuclear material into a stream? Yes. These are the same people who took it and dumped it at the landfill. You think they accidentally released it into a stream? Your Honor. That's what you think? Well, to be clear, there are very good merits. You accidentally put it at the landfill also? Your Honor, first of all, Cotter was not the one transporting it. And here's the critical part, Your Honor. We have very good defenses on the merits. And this case was dismissed at the procedural posture. Our allegations adequately allege that we are a person indemnified. We will be able to prove the actual entitlement at the merits stage. I see that I'm well into my rebuttal time and I respectfully request this Court reverse and I will reserve the remainder of my time. Thank you. No problem. Mr. Roberson. May it please the Court. This Court should reject Cotter's interpretation of Section 170D of the Price-Anderson Act. Cotter presents a novel theory that the mere downstream purchase and possession of radioactive material that had once been the subject of a contract for the benefit of the United States provides an independent downstream purchaser with PAA indemnification. No matter how far back in time... Let's parse this into two different buckets. Bucket one for me is who are persons indemnified? Is it the government's position that the person indemnified for example, is only the person with whom they had the initial contract, Mallinckrodt, the contractor?  It's broader than that. It includes at least persons in privity.  Persons in privity. What else does it include? People who are in nexus with the contracting party with the government. For instance, if you look at the Three Mile Island cases... But here, I mean, Cotter... Let's take out commercial middleman just to make it easier because I don't know that it matters that commercial bought it. Suppose Cotter bought this directly from Mallinckrodt. Cotter is not a person of interest? Right. The notion is what's the contract? The contract is between Mallinckrodt and the United States undertaking a contract for the benefit of the United States. What is that? Making, effectively, steps toward a nuclear weapon. When you sell the material, and there's nothing else going with it, it's just a flat out sale, the activity then is not for the activity for the benefit of the United States. The activity that then causes the liability is, for instance, the buyer dumping the material into a landfill. So, the activity that causes the liability ties to... Suppose the contract included, with Mallinckrodt, included transportation and disposal of radioactive material. This is disposal. That's not good enough to be in connection with the contract? For Mallinckrodt, if Mallinckrodt had a... If there was a claim against Mallinckrodt,    that's possible. Wait. So, just to be clear, are you telling me that right now, if this exact claim was against Mallinckrodt, not against Cotter, if Mallinckrodt, and at some point, not now, but answer this question first, but then tell me the difference between the lake and the landfill, because I'm really baffled on the facts, but are you telling me that if this exact action that Cotter undertook, which was the action for which it was found liable, whatever that action is, if Mallinckrodt had been the one to undertake it, that it would be indemnified?  And I'll say this broadly. The notion is that Mallinckrodt is performing a contract with the United States. If you're going to whether what Mallinckrodt does is reckless, for instance, dumping it in a landfill, if Mallinckrodt were to do something reckless, it was still in the performance of its contract with the United States. That was still for the benefit of the United States, and yes, there would be indemnification for Mallinckrodt. So, the distinction, though, is you've sold the material. The activity that's being undertaken is no longer for the benefit of the United States. Cotter's activity is being undertaken for Cotter's private commercial use, not for the benefit of the United States. And as you're acknowledging, it's a few steps down, too, in the chain of possession. You may have addressed this, but to go back to the hypothetical, if the contract between the United States and Mallinckrodt had come to an end, but Mallinckrodt still had the material and did the same thing that Cotter was accused of doing, indemnity or no? Well, correct first, with respect, Your Honor, that's counterfactual because the material is always owned by the AEC, the Atomic Energy Commission. Still true, or it was true then? Yeah, it was true then, and until it sold, it was the AEC who actually sold the material. But just going with the hypothetical, if Mallinckrodt has material and the contract's ended, that indemnity still goes on. And for instance, it had material, it put it in some places that it shouldn't have put. Even though the contract is done, and so the post-contract activities of Mallinckrodt would still be for the benefit of the United States? What Mallinckrodt did, which was, it released radioactive material into the environment, it did that in connection with its contract for the benefit of the United States. And therefore, whether that contract ends or not, that indemnification continues through what it actually did do. I'm sorry if there's questions. If you're looking at what the person indemnified does, what Carter's doing is they have an untethered definition of a person indemnified. A person indemnified is located within a language of 170D that ties a government's indemnity obligation... Can I ask you this? Actually, I have a really, really trivial question. Which version of the statute governs this case and why? Well, so it's, nobody seems to want to cite 42 U.S.C. There's been different versions, but it's the pre-1988 version, because all the liability arose in that pre-1988 period. Okay. Can you explain what the indemnity, just from a factual standpoint, is about? Does it have to do with the landfill or does it have to do with water? I don't, I was struggling to follow the facts. Just to put the picture on it, there was work done for the atomic weapons production in St. Louis, downtown. They then moved it to the St. Louis airport area. It's called SLAPS. At that point in time, it was sold to Continental. Continental moved it to Laddy Avenue and to then eventually Westlake Landfill. So Laddy Avenue is a separate place where Mallinckrodt never owned material at Laddy Avenue. The claims in the, and so then the material at Laddy Avenue were released at Laddy Avenue and released into the landfill. So the notion that they were mixed together, no, Mallinckrodt had its radioactive material separately.  through a chain of command through Continental and then commercial discount, became an owner of the material at Laddy Avenue and at the Westlake Landfill. So they're separate. The claimants in McClurg, they're saying, we're suing you all because we've been harmed by this nuclear material. You sort it out as to which one of you is responsible. The claimants don't determine what the liability of the PAA is. The PAA liability goes to the contract. This is a contractual indemnification claim. Can I follow up on Judge Toronto's question and hypothetical. I may be  but you    seem to suggest to me that you were assuming the incident at issue occurred before the contract in his hypothetical had ended. Is that a fair Before the contract had   Right. The contract provides the indemnification. The indemnification will continue if your work under the  caused the liability that required indemnification. For our purposes does it matter whether the conduct at issue occurred before or after the  ended? In our purposes it certainly doesn't matter because once that material was sold to Continental it's no longer part of the Malacroft contract for the benefit of the United States. Their basic thesis is that liability runs with and has to be tied to an event that causes public liability. Can I ask one of the points you made in your brief which is a real worry that how is the government supposed to try to  conduct that would give rise to liability when you're not privity with the potentially liable party. Why wouldn't that ability exist by virtue of the license for the source material that Cotter had during the relevant years? That's under 170A. That is not their claim. They had a source material license. They had a license to have that. Why couldn't AEC at that time have said have come and inspected here what Cotter was doing with the material? I don't think the license provides what the terms of the license are and there's no oversight or  components to that license. Really? Right. It's not a record. It's a one-page document. It basically says we're selling this. We're selling it as is. This is to Continental. Wait a second. You're right. My apologies. Cotter gets it from commercial discount. It does have a  You have to have a license to own this sort of material. The license sword, AEC, doesn't have a  The license sword is the NRC actually. Not in 1970. NRC wasn't created until the late 70s. There's a distinction between licensing under 170A and 170D. D is contractual. That's what we have here. We don't have a licensing issue. We have a contractual issue. You look at the language of the contract directly with respect to the  or you can look at the third party beneficiary claim and you look there and you see that the language of the third party beneficiary actually incorporates the PAA language. So you have this notion that it has to be public liability which arises out of or in connection with the contractual activity. They say if we just have the material that's sufficient.  basically writes out the theory that the contractual activity was what instigated the creation of the  If the theory is that just having the  material is the sufficient connection with the contractual activity then we've gone too far. Because obviously that material didn't come from AEC or from Malcrot to Cotter. There's no question about that. It's way down the food chain. Not way down. There were two intermediaries one of which was just the  one was called commercial but the other was the finance company that took it over because of   There's no question this is a purely commercial transaction. We're purchasing this from you. They're getting a diminification from commercial discount. They get the  All they get in terms of regulatory oversight is a license. There's no overhang in terms of DOE's not looking over the  and telling them how to move the material or how to handle it. Any of that sort of stuff. They really are on their own. They're saying no matter what we do years later and for all times just because material was created with the contract it arises from a connection too. We're saying it's way too tenuous a  Just because material was created doesn't mean the public liability for which you're being sued which is dumping the material into the landfill is not in connection with the contract. So that nexus is not there. I'm sorry any other questions? Welcome to turn to this notion of strict liability. One thing they've done in the reply brief is brought the notion that strict liability is enough to bring in the government. So it's a new argument. And secondly it sort of goes to the notion they cite Welkner which is a Missouri state law which is about defective manufacturing of crutches and in that case Missouri court said that we say only that the doctrines are applicable in strict products and this is not a product liability case. Can I ask this question? If this case were to go back and get beyond the rule 12 stage would there be issues about whether the government or some private indemnitor has to go first in payment? There are issues whether there's injury or sitting around right somewhere. General Atomic we believe based on the SEC file hasn't indemnified Cotter. Is there a just obviously we're not there right now but does one of them have to eat the liability before the other? I'm not sure your  but certainly typically when you do have a contract with the  and they do ask for licensing you have to license you have to get your private indemnity and we'll only pay for indemnification in a licensing context when you secure that private threshold insurance. That's another reason why under that licensing paradigm it doesn't work here. They didn't have private insurance. The Welkner holding I'm out of time I can see. Thank you Mr. Welkner. It's somewhat unclear to me is the contract attached to the complaint? It's not your honor. It was incorporated by reference and it was provided to the  court and is in the appendix. Was there an argument made at the district court that there is no reason that there is no reason that there is no reason that there is no reason that there   as to   that this was made applicable to the court to the court of ίν opinion for of of the I  no reason that there is             court of the defense court of the defense defense of the defense of the defense of The This this                    this definition of nuclear incident, which is injury arising out of the radioactive properties of these very carefully controlled, federally regulated nuclear materials, and by the purposes of the statute to protect the public and to encourage the private participation in the nuclear energy industry. We ask that this Court... Thank you. Both counsel and the case is taken on the same day. Thank you.